UNITED STATES of America, Plaintiff,

v.

ONE PARCEL OF REAL PROPERTY WITH BUILDINGS, APPURTENANCES, AND IMPROVEMENTS KNOWN AS 33 SUNSET CIRCLE, MASHPEE, MASSACHUSETTS, Defendant.

Civ. A. No. 85–2608–C.

United States District Court,
D. Massachusetts.

Nov. 25, 1986.

Frederick E. Dashiell, Asst. U.S. Atty., Boston, Mass., for plaintiff.

Joseph P. Toomey, Brighton, Mass., for intervenor Greater Boston Bank.

Frank L. Bruno, Boston, Mass., for claimant Donna Rodriguez.

## MEMORANDUM

CAFFREY, Senior District Judge.

This is a civil action for forfeiture brought *in rem* against one parcel of real property and improvements thereon located at 33 Sunset Circle, Mashpee, Massachusetts. Jurisdiction is based on 28 U.S.C. §§ 1345, 1355, 1356, 1395 and on 21 U.S.C. § 881(a)(6). The United States alleges that the subject property is a proceed traceable to exchanges of controlled substances made in violation of the Controlled Substance Act. Elmer Rodriguez plead guilty to possession of cocaine with intent to distribute and was sentenced by this Court to seven years in the custody of the Attorney General.

After a nonjury trial, I find that the subject property was purchased by Elmer and Donna M. Rodriguez, husband and wife, on August 3, 1984 for a purchase price of $110,000. I further find that they remained the owners of record of the property until it was transferred to Donna M.

Rodriguez individually for a stated consideration of $1.00. I rule that this transfer was fraudulent and made without adequate consideration.

At the trial the parties stipulated in open court that the government had sustained its initial burden to show probable cause for the institution of this lawsuit, i.e., by producing credible evidence which provided a reasonable ground for a belief on the part of government representatives that the defendant property had been purchased with funds which were traceable to an exchange for a controlled substance.

■ I rule that once the probable cause showing has been made the burden shifts to the current owner to prove a defense to the forfeiture action by a fair preponderance of the evidence. *United States v. One 1974 Porsch 911–S Vehicle,* 682 F.2d 283, 285 (1st Cir.1982); *United States v. One 1975 Ford F100 Pickup Truck,* 558 F.2d 755, 756 (5th Cir.1977). At the trial, counsel for the current owner stated, without challenge by government counsel, that the source of all but $22,000 of the funds used to purchase this property had been satisfactorily explained to the government. The basic issue at trial was the source of this remaining $22,000 part of the purchase price as to which the parties were not in agreement.

Donna M. Rodriguez called as her first witness her father, Joseph Horan. Mr. Horan testified that on the night of August 3, 1984 his daughter, Donna came to his house where he gave her an envelope containing $22,500 in $100 bills. Mr. Horan testified that he never had a checking account and that since 1950 he had been putting all of his spare cash into a footlocker in his home. He testified that over the years he had saved over $100,000 in cash but had given all but $40,000 of this amount as gifts to various family members. He further stated that he kept no financial records of any kind and "deals everything in cash." He conceded, however, that he has had four years of accounting training and that he has handled a trust fund for a state agency by which he was formerly employed.

Donna Rodriguez testified that she received the $22,500 in a manila envelope given to her by her father and that she went to the Greater Bank of Boston with that cash and deposited there all but $500 of the $22,500 contained in the envelope. Donna M. Rodriguez stated that she was not employed nor was her husband and admitted that her husband was engaged in distributing cocaine and that he generated money from the distribution of cocaine. She further testified that although she had received a $23,000 check in settlement of a workman's compensation claim, she did not use that check because she and her husband were living on the money he made selling cocaine. She also admitted that Elmer Rodriguez used the telephone in their home to further his drug business and that she personally took telephone calls from Elmer's drug clients. Lastly she testified that on the advice of Elmer's lawyer the real estate was transferred to her seven days after Elmer was arrested by federal agents on the cocaine charges.

When the claimants finished their testimony, the government called as its first witness Pat Hurley, a teller at the Greater Bank of Boston's branch located in Brighton from January 1984 to September 1984. Mr. Hurley testified that previous to January 1984 he was engaged as a religious in West Africa. He testified that he handled the $22,000 cash transaction on August 3, 1984 and he clearly recalled it because it was the only time he had ever handled that amount of cash, and it was the only time he handled a transaction which required the preparation of a report. Mr. Hurley testified that the assistant head teller, Joanne Walsh, took over the preparation of the report for him. He said he had to count the money to verify the true amount and that Ms. Walsh assisted him in so doing. He stated it took him and Ms. Walsh between 5 to 10 minutes to count the large number of bills. He further testified that he received the money from two males whom he characterized as foreigners of Hispanic origin. Mr. Hurley testified that

**438**

no woman was involved in the deposit of that cash. He stated that the currency was of more than one denomination. Mr. Hurley also testified that the limit of the cash in his teller drawer is $4,500 and that the $22,000 was placed into the bank's vault by Ms. Walsh. He further testified that Ms. Walsh told the two men who made the deposit that it had to be reported. Mr. Hurley testified that the two men who made the deposit spoke in a foreign language which he did not understand and that Elmer Rodriguez produced a passport for identification.

Ms. Walsh testified that there were no $100 bills contained in this deposit and that she took the money from Mr. Hurley's tellers' station and placed it in the bank's vaults. She further testified that she checked the cash visually to be sure there were no $100 bills contained in the deposit. On the basis of the foregoing, I find that the $22,000 deposit in question consisted of a very large number of bills of less than $100 denominations.

■ I totally disbelieve the testimony of Joseph Horan. I find that his story about accumulating $100,000 in cash in a footlocker was a pure fabrication made up for purposes of this case. I believe the testimony of Mr. Hurley and Ms. Walsh, whom I find to be totally disinterested witnesses. I conclude by finding that the $22,000 portion of the purchase price of the subject property was the proceeds of Elmer Rodriguez's cocaine dealing and I rule that the $22,000 interest of both Rodriguez's in this property should be forfeited to the United States and that property should be disposed of according to law.

Order accordingly.